UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN M. CARTER                                   CIVIL ACTION

VERSUS                                             NO.  13-4896

LAFOURCHE PARISH SHERIFF'S                         SECTION "R" (2)
OFFICE ET AL.

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Steven M. Carter, was a prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana ("Angola").[1] He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Lafourche Parish Sheriff's Office, the Lafourche Parish Sheriff's Medical Department, Lafourche Parish Sheriff Craig Webber, former Lafourche Parish Prison Warden Cordell Davis and Louisiana State Penitentiary Warden N. Burl Cain.  Carter alleges that, while housed in the Concordia Parish Jail as a Lafourche Parish Jail inmate, he suffered a heart attack for which he received inadequate medical care. He seeks "punitive and compensatory damages for medical malpractice, medical negligence, and endangerment of [his] life. . . ."  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On August 6, 2013, I conducted a telephone conference in this matter. Participating via telephone were plaintiff pro se; Misael Jiminez and Phyllis Glazer,

---

[1]During the Spears hearing, plaintiff confirmed that he was released from prison on July 21, 2013, as he previously advised in writing on July 22, 2013, Record Doc. No. 14.

counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Carter confirmed that he makes a single claim in this case that he did not receive proper medical care for a heart attack he suffered while incarcerated, although he has recently been released from incarceration.  He testified that he was arrested on February 12, 2011, on charges of possession with intent to distribute marijuana and possession of a firearm and placed in the Lafourche Parish Jail, where he initially stayed for six or eight weeks, before he was moved to Concordia Parish for about a month and later back to the Lafourche Parish Jail, before being placed on house arrest for one and a half years. He said he was convicted on September 18, 2012 and was sentenced to seven years in prison, but with credit for time served and "good time."

Carter testified that after his conviction he was sent first to Elayn Hunt Correctional Center for about a month, when he was transferred to the Louisiana State Penitentiary at Angola, Louisiana, where he stayed from November 5, 2012 until his recent release.

As to his medical care claim, he testified that he suffered a heart attack on April 13, 2011, while he was incarcerated in the Concordia Parish jail as a Lafourche Parish pretrial detainee.  He stated that when he suffered his heart attack, he was taken to a hospital in Alexandria, Louisiana, where he was told he needed emergency open heart

-2-

surgery within three to five days. He stated, however, that on the next day he was shipped back to the Lafourche Parish Jail, where he waited for about three weeks before he was taken to the Leonard Chabert Hospital in Houma, Louisiana. He stated that he was transferred directly from Chabert to LSU Medical Center in New Orleans, where he had his surgery and heart stents were surgically implanted.

Carter confirmed that he had received the medical records I previously ordered defendants to produce, Record Doc. No. 17, and that they are accurate. He confirmed the reference in the records that his heart surgery and immediate recuperation at the LSU hospital occurred in late April-early May 2011. He also confirmed the notation in his medical records that when he was initially taken to the Rapides Parish Medical Center emergency room in Alexandria when he first experienced chest pains at the Concordia jail, he was provided with nitroglycerin, a cardiac catheter and a surgery recommendation.

Asked to specify his complaint about his medical treatment for his heart condition, Carter testified: "My complaint is they took me out of the (Alexandria) heart hospital, where they were telling me I needed emergency open heart surgery, and brought me back to jail, and then they brought me to LSU, when Alexandria said the stents wouldn't do me no good, but they put the stents in anyway." Carter stated that during the three weeks or so when he was in the Lafourche Parish Jail between his hospital visits, he was seen by nurses at the jail, who gave him medication for his heart condition, but he continued

to experience chest pains. He confirmed the reference in his medical records that the medication he received during that time in the jail included Clonodon, aspirin and Plavix, along with a diabetic and low salt diet.  He denied that he continued to smoke three packs of cigarettes a day at that time.

He confirmed the dates noted in his medical records indicating that he was transported from the Lafourche Parish Jail to the Chabert hospital in Houma on April 29, 2012, a period of two weeks – not three – from the date he was removed from the Alexandria hospital.  Carter also confirmed that he was taken directly from the Chabert hospital in Houma to the LSU hospital in New Orleans, where he received his heart surgery and stents.

Carter testified that the complaint he asserts about his treatment at LSU is that he was given stents during that surgery, even though he had been told at the hospital in Alexandria that stents would do him no good, and during the surgery at LSU, the surgical team "lost a stent" in his body and had to go back in surgically and remove the lost stent. He confirmed that his claim against LSU is essentially a medical malpractice claim alleging negligent mishandling of the stents.

Carter stated that after his surgery, he stayed in the LSU hospital for about a month, and then was sent back to Lafourche Parish, where he was placed on house arrest instead of in the jail.  He testified that during his year-and-a-half in house arrest, he was

permitted to travel to a clinic at Chabert hospital in Houma, where he was given post-surgical medication for his heart condition.

Carter clarified that he has <u>no</u> complaints about the medical care he received at Angola after his conviction.  He summarized his complaints to include (1) the two-week delay in treatment he experienced after his release from the Alexandria hospital while he waited in the Lafourche Parish Jail to be admitted to the Chabert hospital, and (2) the use of stents and the loss of one stent within his body during his heart surgery at LSU.

He confirmed the notation in his medical records that in addition to the other medications identified above, he received other medications throughout his treatment, including Tramadol for pain, Plavix, Lacenifil, Crestor, an inhaler and Speriva for asthma. He stated that he is not currently receiving any treatment for his heart conditions, except that he is still taking the prescribed medications.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>,

105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended and expanded upon by his testimony at the <u>Spears</u> hearing, at best states only a state law medical malpractice or tort claim and fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

## II.   MEDICAL CARE

Carter was a pretrial detainee for part of the time and a convicted prisoner for the remainder of the period about which he complains about his medical care as a Lafourche Parish prisoner.  Specifically, he asserts that he suffered a heart attack for which he received inadequate medical care.

---

[2]The court must "liberally construe briefs of <u>pro</u> <u>se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test

is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Carter must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

I assume for purposes of this report and recommendation that plaintiff's heart attack presented a serious medical need for constitutional purposes. Carter has alleged

facts, however, confirmed by his testimony and the verified medical records, that negate any inference of deliberate indifference or other constitutional violation by defendants. Carter's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated for his heart attack.

Carter testified and the medical records confirm that he was immediately hospitalized when he first experienced chest pains and that he subsequently was transported by defendants to two other hospitals, where he received examinations, sophisticated surgery and numerous appropriate medications for his condition. Although Carter experienced some initial delay in his treatment and expresses dissatisfaction with the type and quality of his surgery, it is clear that he received extensive treatment. Thus, this record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second

plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Carter has alleged initial delay of two or three weeks in receiving medical care in that he did not receive the heart surgery he was told was necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and effectiveness of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. The decisions made by

the treating medical providers concerning when and how to render the care that they gave, including for example the type and timing of his heart surgery, including the use of stents, were classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the continuing and long-term medical attention Carter received for his heart condition during his incarceration.

Contentions like Carter's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (emphasis added) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); Rowe v. Norris, 198 Fed. Appx. 579, 581 (8th Cir. 2006) (no

constitutional violation when inmate disagreed with physician's choice of medication); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most, it is medical malpractice . . . .") (emphasis added); Corte v. Schaffer, 24 F.3d. 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)  (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Wesson v. Oglesby, 910 F.2d 278,

284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs rising to the level of a violation of his constitutional rights.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.  If Carter wants to pursue relief under these circumstances, he must do so in a medical malpractice or state law tort claim pursued in the state court system.

<u>**RECOMMENDATION**</u>

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

-17-

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

        New Orleans, Louisiana, this ___13th___ day of September, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.